## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| **JESSE CREWS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 21-CV-01019-STA-jay** |
| | ) | |
| **MAXIM HEALTHCARE SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS

Before the Court is Defendant Maxim Healthcare Services, Inc.'s (Maxim) Motion to Dismiss and Compel Arbitration (ECF No. 9) in this action brought by an employee, Jesse Crews, against an employer, Maxim, for retaliatory constructive discharge and discrimination in violation of the Tennessee Disability Act, Tenn. Code. Ann. § 8-50-103. Plaintiff seeks actual damages, including lost wages and benefits, as well as compensatory and punitive damages. Defendant, however, asserts that all parties are bound to arbitrate any dispute surrounding. For the following reasons, the instant Motion is **GRANTED**. Plaintiff Jesse Crews is compelled to arbitrate his claims against Defendant in accordance with their agreement.

## BACKGROUND

The following facts are alleged by Plaintiff in his Complaint. (ECF No. 1.) On September 6, 2017, Plaintiff was hired by Defendant as a Licensed Practical Nurse. Plaintiff was an at-will employee. On or about December 19, 2018, Plaintiff reported a workers' compensation claim to Defendant for an injury that had occurred while Plaintiff was working. Defendant subsequently

provided Plaintiff with workers' compensation benefits, including authorized medical treatment that resulted in temporary restrictions on his work, which Defendant allegedly failed to accommodate.  Plaintiff settled his workers' compensation claim with Defendant on December 19, 2019.  When Plaintiff's physician cleared him for return to active work, Plaintiff requested that Defendant assign him to work on numerous occasions.  After approximately three months without a new assignment from Defendant, it became clear to Plaintiff that Defendant had constructively discharged him and that such discharge was retaliation in response to Plaintiff's workers' compensation claim.

Defendant argues that Plaintiff's claims are improperly before the Court because, as a required part of the onboarding process, Plaintiff and Defendant mutually agreed to submit any and all disputes between them to binding arbitration in a Mutual Agreement to Arbitrate (the Agreement). Plaintiff's claims should therefore be dismissed.  Plaintiff rebuts that the instant Agreement cannot be enforced because Plaintiff did not understand its terms so as to knowingly and voluntarily waive his right to sue.  Specifically, Plaintiff argues that he "does not recall" ever seeing the arbitration agreement, did not have it explained to him, was not given time to consult with counsel, and did not affix his signature to it. The "purported signature" according to Plaintiff, is neither Plaintiff's signature nor the electronic signature that he adopted.  Finally, even if Defendant can prove that Plaintiff was shown the Agreement and that he signed it, Plaintiff could not have knowingly and voluntarily waived his right to a judicial hearing.

## STANDARD OF LAW

A motion to compel arbitration "is not a motion [that] comes within the ambit of Rule 12(b) of the Federal Rules of Civil Procedure . . . ." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003).  Such motions are governed rather by the Federal Arbitration Act, 9 U.S.C. § 1,

*et seq.* (the "FAA").  *Id.*  The FAA was enacted with the purpose of "revers[ing] the longstanding

judicial hostility to arbitration agreements that had existed at . . . common law . . . and . . . plac[ing]

arbitration agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson

Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Rosenberg v. BlueCross BlueShield of Tenn., Inc.*,

219 S.W.3d. 892, 902–03 (Tenn. 2006) (discussing the impact of the FAA).  When a party files a

motion invoking an arbitration agreement, the Court "must follow the procedure set forth in section

4 of the FAA."  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350

F.3d 568, 573 (6th Cir. 2003).  Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
> under a written agreement for arbitration may petition any United States district
> court . . . for an order directing that such arbitration proceed . . . .  [U]pon being
> satisfied that the making of the agreement for arbitration or the failure to comply
> therewith is not in issue, the court shall make an order directing the parties to
> proceed to arbitration . . . .

9 U.S.C. § 4.  If the parties to a civil action have a valid arbitration agreement, the Court should

compel arbitration and stay the proceedings pending the outcome of the arbitration.  *Fazio v.

Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 3); *see also Great Earth

Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 4; *Stout v. J.D. Byrider*,

228 F.3d 709, 714 (6th Cir. 2000)) ("'[W]hen asked by a party to compel arbitration under a

contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at

issue.'  If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must

compel arbitration.")  In order to show that the validity of the agreement is "in issue," the party

opposing arbitration must show a genuine issue of material fact as to the validity of the agreement

to arbitrate. *See Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 129–30 (2d Cir.), *cert. denied,* 522

U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997). The required showing mirrors that required to

withstand summary judgment in a civil suit.  *Id; Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The Court conducts a four-step analysis of the arbitration agreement.  *See Fazio*, 340 F.3d at 392 (citing *Stout*, 228 F.3d at 714).  First, the Court must determine whether the parties have agreed to arbitrate.  *Id.*  Second, the Court construes the scope of the agreement.  *Id.*  Third, where federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable.  *Id.*  Finally, if the Court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.  *Id.*

"Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). Therefore, any doubts regarding arbitrability must be resolved in favor of arbitration.  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  However, while the courts must respect "the liberal federal policy favoring arbitration agreements ... arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir. 2007).* (internal citation and quotation omitted). Because arbitration agreements are fundamentally contracts, the enforceability of a purported agreement to arbitrate is evaluated according to the applicable state law of contract formation. *Id.*  Here, Plaintiff avers that Maryland state law should be applied, as per the choice of law provision in the same Agreement to which Plaintiff argues he is not bound which states: "…this agreement to arbitrate and its interpretation, validity, construction, enforcement, and performance, as well as disputes and/or Claims arising under this Agreement to arbitrate, shall be governed by the laws of the State of Maryland." (ECF No. 10-1 at ¶ 9.)  In the

- 4 -

particular instance of enforcing a contract in a diversity action, the federal court will generally

enforce the parties' contractual choice of governing law.  *See Savedoff v. Access Group, Inc.,* 524

F.3d 754, 762 (6th Cir.2008).  "Tennessee will honor a choice of law clause if the state whose law

is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's

public policy." *Wright v. Rains,* 106 S.W.3d 678, 681 (Tenn.Ct.App.2003) (quoting *Bright v.*

*Spaghetti Warehouse, Inc.,* No. 03A01-9708-CV-00377, 1998 WL 205757, at *5 (Tenn. Ct.App.

April 29, 1998)).  Here, because the parties have chosen to be bound by the laws of Maryland

which bear a reasonable relation to the transaction, both parties agreeing that the contract laws of

Maryland and Tennessee are substantially similar, the Court will apply Maryland law to

determining whether an arbitration contract was formed.

ANALYSIS

The Court must first determine whether the parties agreed to arbitrate.  *Fazio v. Lehman*

*Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th

Cir. 2000)).  "An arbitration agreement may be invalidated for the same reasons for which any

contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Id.*

(citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)).  And "'[o]rdinary state-law

principles that govern the formation of contracts' will apply to this analysis." *Id.* (quoting *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under Maryland law, a contract exists

where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and

sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013)

(quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004).

The Agreement giving rise to this Motion requires:

> Any disputes, claims, complaints or controversies ("Claim(s)") between me and
> MAXIM arising out of and/or directly or indirectly related to my application for

- 5 -

employment with MAXIM, my employment with MAXIM, the terms and conditions of my employment with MAXIM, and/or the termination of my employment with MAXIM, will be resolved by arbitration and NOT by a court or jury as set forth herein.

(ECF No. 9-1 at ¶ 1.)  To start, Plaintiff maintains that there is no evidence of manifestation of agreement because he did not sign the arbitration Agreement.  Specifically, Plaintiff avers that the "purported signature on the arbitration agreement propounded by Defendant is actually no signature at all."  Rather, Plaintiff's true handwritten signature was provided by Plaintiff with the consent that the signature be used in the future, although not specifying whether necessarily for all future forms and agreements.  Plaintiff further implies that Defendant imposed Plaintiff's digital signature on the arbitration agreement because it had access to Plaintiff's name and email address. In an affidavit attached to Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff states that he "does not remember ever seeing or signing the arbitration agreement" and does not see his signature anywhere on the document Maxim professes to be the Agreement.  (ECF No. 10-2 at ¶ 3.)

Ultimately, Plaintiff's scant evidence is not sufficient to show a genuine issue of material fact as to whether Plaintiff signed the arbitration agreement.  "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form." Md. Code Ann., Com. Law § 21-106.  Electronic signatures are attributable to the person if it was the act of the person. Md. Code Ann., Com. Law § 21-108 ("The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.)  Above the placeholder line on the Agreement for "Applicant/Employee Signature" reads "Digitally signed by Jesse R. Crews Location: jesseecrews@gmail.com  09/06/2017  09:44:33  AM  04:00."   (ECF No. 9-1  at  30.) Notwithstanding Plaintiff's assertions to the contrary, abundant evidence exists attributing this

electronic signature to the Plaintiff.  First, Plaintiff has signed with a "handwritten" signature a

"Consent to Receive, Review, Access, Sign, & Authenticate Certain Documents, Forms, Letters,

& Other Information Electronically ('E-Signature Disclosure & Consent')" authorizing the use of

his electronic signature for "[a]ny other employment-related documents."  (ECF No. 9-1 at ¶ 19.)

The consent form states in relevant part: "By checking the box and clicking the 'I Agree' button

(all below), you are agreeing that your electronic signature is the equivalent of your handwritten

(or wet) signature, with all the same legal and binding effect."  The Agreement is plainly an

employment-related document.  Further belying Plaintiff's assertion that his electronic signature

on the arbitration agreement is invalid, is his conspicuous acceptance of the legal effect of his

electronic signatures on every other piece of employment paperwork.  Plaintiff's identical

electronic signature is also present on his "Background Check Authorization Form," "Background

Information Acknowledgment Form," his "Employment Application," his "Conditional Offer of

Employment," and a form listing the job responsibilities of his position with Maxim.  (ECF No. 9-

1 at ¶ 6-37.)  Plaintiff evidently believed that his electronic signature was binding, evinced by his

beginning to work for Maxim and availing himself of the workers' compensation mechanism at

the company.  Indeed, the only "handwritten" signature appears on the "E-Signature Disclosure &

Consent" form.  Finally, Defendant has sufficiently shown the efficacy of the security procedure

applied to determine that the electronic signature on the Agreement is attributable to Plaintiff.

Defendant attaches the Declaration of Nathalie Williams, the Director of Credentialing for Maxim.

(ECF No. 9-1 at ¶ 2.)  Williams has personal knowledge of Maxim's employment application and

on-boarding system and procedures.  Williams avers that Maxim uses an onboarding system that

generates a unique password for each applicant connected to their email address to which Maxim

does not have access.  (*Id.*)  Plaintiff used his unique password to affirm agreement to electronically

access, receive, review, sign, and authenticate documents related to his employment with Maxum. (*Id*. at ¶ 3.)   On September 6, 2017, Plaintiff acknowledged and electronically signed the Agreement, which involved completion of multiple steps.   To sign each document with an electronic signature, Plaintiff first had to log into the on-boarding system with his unique password and email.   He then had to select a box indicating that he had reviewed and accepted the document prior to signing and moving on to the next document.   (*Id*.)   Plaintiff's assertion that the information contained in his electronic signature is available to anyone within Maxim is, first, not supported by evidence, and, second, unavailing as an insinuation that the electronic signature could have been placed on the form by Maxim.   After all, as per Plaintiff's own admission, Defendant also had access to Plaintiff's "written" signature.   There is therefore no genuine issue of material fact as to whether Plaintiff signed the Agreement.

Plaintiff next alleges that the Agreement is invalid because he did not sign it knowingly or voluntarily. Specifically, Plaintiff alleges that there is a material dispute of fact over whether Plaintiff was ever shown the Agreement and whether it was explained to him.   According to the Plaintiff, he did not have sufficient time to review the Agreement and properly contemplate his waiver of the right to sue – having been presented with it "less than two hours into the business day" and directly after an in-person job interview.   Plaintiff additionally avers that he had no idea what the word "arbitration" meant.

In reviewing whether a waiver of prospective claims is valid, the Sixth Circuit instructs us to apply ordinary contract principles. "In evaluating whether a [waiver] has been knowingly and voluntarily executed, we look to (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4)

consideration for the waiver; as well as (5) the totality of the circumstances." *Morrison v. Cir. City Stores, Inc*., 317 F.3d 646, 668 (6th Cir. 2003) (citations omitted.)

Plaintiff principally analogizes this case to the following two federal district of Maryland cases. First, *Mansour v. Kmart Corporation*, an unreported case where the district court held that a material issue of fact existed as to whether the plaintiff accepted her employer's arbitration agreement. In that case, the court denied the employer's motion to compel arbitration, holding that limited discovery was necessary regarding the online system used by the defendant as part of the orientation of new employees, and the procedures used to insure the accuracy of the identity of the person accessing the system, as well as plaintiff's ability to understand the instructions and content of the written materials in the orientation. *Mansour*, No. PWG-17-2440, 2018 WL 3575062, at \*4 (D. Md. July 25, 2018). Second, Plaintiff cites to *Whitten v. Apria Healthcare Grp., Inc.*, another unreported district court of Maryland case where the court authorized limited discovery to determine whether the online portal used by the plaintiff to allegedly sign an arbitration agreement with her employer was reliable. No. PWG-14-CV-3193, 2015 WL 2227928, at \*3 (D. Md. May 11, 2015). While the Court is not bound by these cases, it is nonetheless instructive to distinguish them from the instant case, which the Court is readily able to do. In the former case, defendant submitted as evidence a screenshot of an unsigned form allegedly acknowledged by the plaintiff, who had difficulties with English. In the latter, decided by the same judge, defendant employer again only produced evidence of an unsigned acknowledgment form without a signature or a date line in contrast to the instant Agreement which is dated and signed with an expressly authorized electronic signature. The instant Agreement was further not presented to Plaintiff as part of some mandatory workplace resolution training course, the passive non-acceptance of which would be construed as acceptance within thirty days, as was the case in

*Whitten*.   Rather, the Agreement was formally received by Plaintiff as part of his onboarding alongside other important employment forms and agreements.   Further, Plaintiff affirmatively signed the Agreement – it was not adopted by default after beginning employment.

Plaintiff's reliance on these cases and his conclusory and self-serving affidavit is insufficient to create an issue of material fact.  *See Solomon v. CARite Corp. LLC*, 837 F. App'x 355, 362–63 (6th Cir. 2020) citing *Accord Stephens v. Frisch's Big Boy Rests.*, No. 1:19-CV-954, 2020 WL 4754682, at *3 (S.D. Ohio July 30, 2020) ("Plaintiff's naked assertion that she did not sign the arbitration agreement, without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether she electronically acknowledged the arbitration agreement."); *Franklin*, 2017 WL 7691757, at *4 ("[The plaintiff's] testimony that she did not recall reviewing or agreeing to the Arbitration Agreement is not sufficient to refute the [defendant's] [online] system record that she had done so."); *see also Morgan v. United Healthcare Servs., Inc.*, No. 1:12-cv-676–HJW, 2013 WL 1828940, at *3 (S.D. Ohio Apr. 30, 2013) ("In her affidavit, plaintiff...indicates she does not 'believe' she submitted an electronic signature 'that agreed to arbitration.' Such conjecture is belied by the record and provides no basis to avoid arbitration....To the extent plaintiff suggests she does not remember, this fails to create any issue as to whether the parties had a valid agreement to arbitrate.").  The Court will evaluate the afore-mentioned ordinary contract principles to determine whether any issue of material fact exists as to Plaintiff's knowing and voluntary waiver of his right to a judicial forum.

First, Plaintiff possessed sufficient experience and education to knowingly waive his right to sue Defendant.  Unlike the plaintiff in *Mansour*, there is no evidence to suggest that Plaintiff is not proficient in English.  Plaintiff's application indicates that he has a bachelor's degree from the University of Memphis and several professional certifications.  He applied to Maxim for a position

as a Licensed Practical Nurse, a job he had held at a previous place of employment, indicating

familiarity with employment practices in his chosen field and generally.  (ECF No. 9-1 at ¶ 7-10.)

In *Sako v. Ohio Department of Administrative Services*, the Sixth Circuit found that a plaintiff, a

native French-speaker with a high-school education who had taken some English classes, had

sufficient experience, background, and education to understand the contract that he signed. 278 F.

App'x 514, 518–19 (6th Cir. 2008); *see also Hank v. Great Lakes Construction Co.*, 790 F. App'x

690, 699 (6th Cir. 2019) (Plaintiff with a GED and a post-secondary proficiency in reading and

comprehension had sufficient experience, background, and education to agree to a contract

voluntarily and knowingly.) Crews well exceeds the education and job experience of the above-

cited plaintiffs, placing him in a position to understand the arbitration Agreement that he signed.

Second, Plaintiff had sufficient time to consider whether to sign the waiver.  Illustratively,

the plaintiff in *Hank v. Great Lakes Construction Co.*  unsuccessfully argued that he could not

have voluntarily or knowingly signed a waiver of his right to sue because his employer never

informed him that he could take additional time to review or consult an attorney.  The Sixth Circuit

responded that the employer was under no obligation to do so.  *Hank*, 790 F. App'x 690, 700.  The

fact that the *Hank* plaintiff did not request more time to either review the waiver or consult an

attorney weighed in favor of finding a knowing and voluntary waiver.  *Id*.  Evaluating more

extreme circumstances, the Sixth Circuit found that an employee had sufficient time to consider a

waiver of her Title VII claim where she was handed the waiver in the middle of her workday, her

employee told her to sign the document or face unemployment, and her employer "stood behind

her while she read through the agreement, and she spent only five to ten minutes reviewing the

arbitration agreement, without the assistance of counsel."  *Solomon v. CARite Corp. LLC*, 837 F.

App'x 355, 362–63.  Likewise, here, Plaintiff does not allege that he requested additional time to

- 11 -

review the arbitration agreement or that he asked to consult an attorney prior to signing.  Plaintiff

argues that, plainly, two hours is insufficient time to consider a waiver of his rights to sue.

However, this Circuit has held that "a matter of minutes" is sufficient time to sign such a waiver.

*See Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 518 (6th Cir. 2008).  Plaintiff signed

the Agreement below the following all-capitalized paragraph:

> EMPLOYEE ACKNOWLEDGES THAT: EMPLOYEE HAS CAREFULLY
> READ THIS AGREEMENT AND UNDERSTANDS THE TERMS OF THIS
> AGREEMENT. THIS AGREEMENT IS BEING ENTERED INTO
> VOLUNTARILY…EMPLOYEE HAS BEEN GIVEN THE OPPORTUNITY
> DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND HAS
> EXERCISED THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHES
> TO DO SO.

(ECF No. 9-1 ¶ 30.)  Therefore, having been advised of the opportunity to do so, and having failed

to avail himself of the option to request more time to review the Agreement and to discuss it with

private legal counsel, Plaintiff's arguments on this factor are unavailing.

Next, the arbitration agreement is sufficiently clear.  Plaintiff's claimed ignorance of

arbitration's meaning is undercut by the fact that Agreement specifies what arbitration is on the

very first page.  It states:

> Any disputes, claims, complaints or controversies ("Claim(s)") between me and
> MAXIM arising out of and/or directly or indirectly related to my application for
> employment with MAXIM, my employment with MAXIM, the terms and
> conditions of my employment with MAXIM, and/or the termination of my
> employment with MAXIM, will be resolved by arbitration *and NOT by a court or
> jury as set forth herein*.

(*Id*. at ¶ 24.) (Emphasis added.)  The section titled "Arbitration Procedures" further sets out,

plainly, and with sufficient detail, the procedures involved in the proposed arbitration.

Additionally, the brief document sets out which claims are and are not covered by the arbitration

agreement.  Plaintiff was therefore on notice that his present claims under the Tennessee Disability

Act and for retaliatory discharge fall under the purview of this Agreement.

Fourth, parties' mutual non-illusory agreement to arbitrate constitutes sufficient consideration. *Hewitt v. Auto Showcase of Bel Air*, No. 0217,SEPT.TERM,2017, 2018 WL 2437240, at *5 (Md. Ct. Spec. App. May 30, 2018) ("When contracting parties exchange reciprocal promises to arbitrate disputes, each promise provides consideration for the other.") *Baltimore County Fraternal Order of Police Lodge No. 4*, 429 Md. at 556, 57 A.3d at 438; *Cheek*, 378 Md. at 153, 835 A.2d at 664; *Holmes*, 336 Md. at 544, 649 A.2d at 370; *Nowak*, 157 Md. App. at 33, 848 A.2d at 711.

Evaluating the totality of the circumstances, Defendant has demonstrated, through documents, electronically stored information, and affidavits, that there is no genuine dispute as to any material fact, including whether Plaintiff knowingly and voluntarily waived his right to sue Defendant in a judicial forum.

Defendant further requests attorney's fees incurred in bringing their motion to dismiss, citing to *Seymour v. Renaissance Healthcare Grp., LLC*, No. 3:14-CV-144-PLR-HBG, 2015 WL 1458049, at *6 (E.D. Tenn. Mar. 30, 2015) (finding that party was entitled to attorney's fees where opposing party acted unreasonably and in bad faith in filing claims for an action that they had previously settled.) The Court does not find that Plaintiff acted unreasonably or in bad faith. Therefore, the Court will decline to grant such relief and each party shall bear their own costs.

## CONCLUSION

For the reasons stated above, the court finds that a valid arbitration agreement exists between Crews and Maxim and that the current dispute between the parties falls within the scope of that agreement. Further, there are no non-arbitrable federal statutory claims. Accordingly, Maxim's motion to compel arbitration is **GRANTED**. Plaintiff is required to submit his claims against Maxim to arbitration and his claims before this Court are hereby **DISMISSED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  June 14, 2021.